### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KELLY ROSADO, on behalf of** | ) | |
| **J.R.A., a Minor Child,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-602-GKF-TLW** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Kelly Rosado, on behalf of J.R.A., a minor child, seeks judicial review of the Commissioner of the Social Security Administration's decision finding that her son is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

**Sequential Evaluation for Child's Disability Benefits**

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has impairment that: (1) meets, medically equals, or functionally equals the listings of impairments for children;[1] and (2) meets the duration requirement.

If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The

---

[1] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## BACKGROUND INFORMATION

**Procedural History – Initial Application**

Plaintiff, then a one-year-old male, applied (through his mother) for Title XVI benefits on December 11, 2008, alleging a disability onset date of April 27, 2007, his date of birth. (R. 81-83). Plaintiff's mother claimed that the child was disabled due to bilateral club foot. (R. 104). Plaintiff's claim for benefits was denied initially on March 3, 2009, and on reconsideration on July 27, 2009. (R. 43-49). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on April 19, 2010. (R. 31-42). The ALJ issued a decision on May 17, 2010, denying benefits and finding plaintiff not disabled because he did not meet a listing or have the requisite limitations in the domains of functioning. (R. 11-27). For a child to qualify as disabled, he must have a marked limitation in two domains of functioning or one extreme limitation. (R. 27). The ALJ found that plaintiff had a marked limitation in only one domain – health and physical well-being – due to the treatment required to attempt to correct his club feet. (R. 22-27). The Appeals Council denied review, and plaintiff appealed to the District Court. (R. 1-4).

In that appeal, plaintiff argued that the ALJ had failed to consider the proper Listing criteria. (R. 329). The ALJ considered whether plaintiff's functional abilities were comparable to children not yet able to walk, rather than to "older children who would be expected to be able to walk." Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 101.00B2b(3)); (R. 297-98). Plaintiff also argued that the ALJ made conflicting findings regarding his limitations in the domains of Moving About and Manipulating Objects and Health and Physical Well-Being. (R. 330-31). The ALJ found that plaintiff had no limitation in the former domain but a marked limitation in the latter domain because the treatment and surgeries had limited his ability to ambulate in his three-year life span. Id.; (R. 294-97). On September 24, 2012, the undersigned reversed the final decision of the Commissioner denying benefits and remanded the case for further action.[2] (R. 324-32). The undersigned held that the ALJ should have considered the Listing criteria for older children under Listing 101.00B2b(3) and was required to resolve the conflicts in his findings with respect to the impact of plaintiff's bilateral club foot on his ability to ambulate. Id.

On remand, the Appeals Council ordered the ALJ to offer plaintiff the opportunity for a new hearing, take any new evidence necessary to complete the record, and issue a new decision. (R. 335).

**The Second ALJ Hearing**

The ALJ[3] held a second hearing on June 3, 2013. (R. 277-90).

At the second hearing, plaintiff's mother recounted plaintiff's history of treatment to correct his club feet, from birth in 2007 to his most recent surgery in October 2012. (R. 282-83).

---

[2] The parties consented to magistrate judge jurisdiction. (R. 324-32).

[3] ALJ Charles Headrick issued the first decision. (R. 11-27). On remand, the case was assigned to ALJ Lantz McClain. (R. 252-70).

She stated that plaintiff never crawled due to the foot-to-hip casting from the treatment and did not learn to walk until July 2008. (R. 284). She also testified that plaintiff's most difficult times occurred in 2010 and 2011. Id. Plaintiff "had a problem keeping his balance, being able to walk by himself." Id. Plaintiff could not keep pace running and playing with the other children, and he could not "walk up and down stairs at all." Id. She clarified that he can now manage ten to fifteen stairs with two rails. (R. 288). If the staircase has only a single rail, he needs someone to hold his free hand. Id.

Plaintiff's mother testified that plaintiff's left leg "still turns in." (R. 284). She said that the doctors were not sure why treatment was less effective on plaintiff's left foot and had told her that it could be an issue with his hip. (R. 285). At the time of the hearing, plaintiff attended physical therapy twice a week, where he worked on being able to "stand, sit, squat, play . . . and do the normal things a kid would do." (R. 284). He "waddl[ed] like a duck" when walking in an attempt to keep his weight of his left foot. (R. 285). He drags his left foot, causing him to trip and fall. Id. Plaintiff's mother could not testify to plaintiff's mobility at school, but at home, he would walk for ten to fifteen minutes before needing to rest. (R. 286). His rest periods could last thirty minutes to an hour. Id. In the house, plaintiff prefers to scoot or crawl. Id. If they take a ten minute walk to the store, plaintiff's mother usually has to carry him home. Id. Plaintiff can play basketball with other children for five to seven minutes. (R. 287). Physical therapy is taxing, and plaintiff sometimes complains of pain in his ankle near the surgical site. Id.

After receiving plaintiff's mother's testimony and adding some exhibits to the record, the ALJ closed the hearing. (R. 280-81, 289-90).

**The Second ALJ Decision**

The ALJ issued a new decision on June 28, 2013. (R. 252-70). The ALJ found that plaintiff was an older infant on the date of his application for benefits and a preschooler at the time of the decision. (R. 258). Plaintiff had the severe impairment of bilateral club foot. Id. The ALJ evaluated plaintiff's impairment under Listing 101.02(A), Major Dysfunction of a Joint(s) (due to any cause). Id. The ALJ stated that, to meet the listing, plaintiff must demonstrate an "inability to ambulate effectively as defined by 101.00(B)(2)(b)." Id. The ALJ then quoted the regulation's three definitions of "inability to ambulate effectively" as follows[4]:

b. What we mean by inability to ambulate effectively.

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 101.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

(2) How we assess inability to ambulate effectively for children too young to be expected to walk independently. For children who are too young to be expected to walk independently, consideration of function must be based on assessment of limitations in the ability to perform comparable age-appropriate activities with the lower extremities, given normal developmental expectations. For such children, an extreme level of limitation means skills or performance at no greater than one-half of age-appropriate expectations based on an overall developmental assessment rather than on one or two isolated skills.

(3) How we assess inability to ambulate effectively for older children. Older children, who would be expected to be able to walk when compared to other children the same age who do not have impairments, must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities. They must have the ability to travel age-appropriately

---

[4] The ALJ did not quote sections b(2) and b(3) in their entirety. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 101.00B2b(2) and (3). This omission will be discussed further in the analysis section.

> without extraordinary assistance to and from school or a place of employment.

(R. 259). Applying these definitions, the ALJ stated that "[t]he claimant's limitations do not appear to meet these requirements, as the claimant is able to ambulate without a handheld assistive device." Id. The ALJ concluded that plaintiff did not meet the Listing without further analysis. Id.

The ALJ then recited the mother's testimony in great detail, including her recitation of plaintiff's treatment history and her perceptions of his current functional ability. (R. 260-61). After restating the mother's testimony, the ALJ found that it was "not entirely credible for the reasons explained below." (R. 261).

Following that statement, the ALJ reviewed the medical evidence. The ALJ discussed the initial evaluation and casting performed when plaintiff was twenty-four days old; the first Achilles tendon lengthening surgeries in July 2007; and the subsequent casting, bracing, and splinting. (R. 261). In September 2007, Dr. Alan W. Holderness, plaintiff's orthopedist, noted that plaintiff's "left heel cord 'has resumed some tightness,'" but the right foot was able to "move to 'past neutral.'" Id.

In October 2007, plaintiff began treatment at Shriner's Hospital. (R. 262). Casts did not improve plaintiff's condition, so surgeons at Shriner's performed a second surgery on both Achilles tendons in January 2008. Id. By October 2008, plaintiff was able to walk, but his right foot "had better dorsiflexion than the left." Id. However, plaintiff's left heel did touch the ground when he walked. Id.

Plaintiff continued outpatient treatment at Shriner's in 2009. During a January 2009 examination, the doctor noted that generally, plaintiff's heels were in a neutral position while walking and that plaintiff quickly corrected walking on the lateral aspect of his foot. Id. When

plaintiff returned to Shriner's in April 2009, his mother reported that plaintiff "was dragging his left foot and walking on top of his toes." Id. The physician stated that plaintiff did "slightly" drag his left toes "but otherwise achieves plantigrade foot when he walks and *walks with a normal gait pattern*." Id. (emphasis added in ALJ decision). Plaintiff was later diagnosed as being knock-kneed, and in December 2012, the physician at Shriner's prescribed physical therapy. Id.

Plaintiff underwent a physical consultative examination in February 2009. Id. According to the ALJ, the examining physician noted that plaintiff "was very active, climbing on chairs and the examination table." Id. Plaintiff had mild to moderate inversion of the medial arch on the left foot and "very mild" inversion at the medial arch on the right foot. Id. However, plaintiff was able to ambulate "with a stable gait at an appropriate speed without the use of assistive devices," although the examiner noted that plaintiff walked "flat foot with mild inversion of the left foot." Id.

With respect to plaintiff's physical therapy, on May 10, 2013, the physical therapist found that plaintiff's balance was improving. Id. At that same session, plaintiff's mother reported that plaintiff "had been playing outside quite a bit." Id.

Plaintiff's primary care records showed treatment for a number of general childhood issues. (R. 263). Early on, plaintiff did have an allergic reaction to his leg braces, resulting in a "'weeping' rash." Id. At twelve months old, plaintiff could not stand independently but could pull up to a standing position "while holding onto something," prompting the physician to discuss childproofing with the mother. Id. In October 2012, plaintiff's left leg was in a knee-length cast, and he was noted to have "a gait abnormality." Id. The ALJ noted that "aside from the continuing bilateral clubfoot treatment, there were no abnormalities on examination." Id.

The ALJ also reviewed a questionnaire from plaintiff's kindergarten teacher, dated May 2013. Id. In that report, the teacher stated that plaintiff's mobility was limited when he wore a brace or cast. Id. Plaintiff also cried at school sometimes when he wanted his mother. Id. Otherwise, the reported issues were unrelated to plaintiff's bilateral clubfoot, and the ALJ found that they were not sufficient to warrant finding additional impairments. Id. The ALJ did find that the teacher's report was consistent with the medical evidence. Id.

The ALJ concluded that, based on the medical evidence, plaintiff's clubfoot was resolved on the right side. (R. 263). The ALJ found that plaintiff's prognosis on the left foot was unknown but that, with physical therapy and continued treatment, plaintiff had the opportunity to improve. Id. The ALJ then praised the mother for her diligence in seeking treatment and credited her for plaintiff's progress. Id.

The only medical opinion evidence in the record came from the agency physicians. (R. 264). The two physicians who reviewed plaintiff's case opined that plaintiff has a marked limitation in the area of Health and Physical Well-Being based on plaintiff's bilateral clubfoot. Id. The ALJ gave some weight to those opinions but found that the marked limitation should be addressed under the domain of Moving About and Manipulating Objects. Id.

In assessing plaintiff's limitations in the six domains of functioning, the ALJ found that plaintiff had a marked limitation in the domain of Moving About and Manipulating Objects and less than marked limitations in the domains of Health and Physical Well-Being and Caring for Yourself. (R. 264, 267-70). In the area of Moving About and Manipulating Objects, the ALJ based his finding on the fact that "[t]he claimant has considerable difficulty walking, but he is able to walk without a handheld device." (R. 268). In the area of Caring for Yourself, plaintiff's less than marked limitation was "associated with his difficulty with walking." (R. 269). In the

area of Health and Physical Well-Being, plaintiff's less than marked limitation acknowledged the lengthy treatment process that plaintiff has undergone to correct bilateral club foot. (R. 270). That treatment necessarily required significant recovery time that "has caused the claimant marked limitation in his ability to ambulate over the three year period." Id. Aside from this single, significant physical impairment, however, the ALJ found plaintiff to be in good health. Id.

Because the ALJ did not find marked limitations in at least two domains of functioning or an extreme limitation in one domain of functioning, the ALJ concluded that plaintiff was not disabled. Id.

The Appeals Council denied review, and plaintiff appealed. (R. 239-42; dkt. 2).

**Plaintiff's Medical Records**

Plaintiff's allegations of error do not challenge the ALJ's interpretation of the medical evidence. Any necessary discussion of the evidence itself, then, will be addressed in the analysis section of this Report and Recommendation.

## ANALYSIS

Plaintiff raises multiple issues on appeal: (1) that the ALJ erred in finding that plaintiff did not meet the listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 101.00B2(b) or its functional equivalent; (2) that the ALJ did not conduct a proper credibility analysis; and (3) that the ALJ should have found that plaintiff was entitled to benefits for a closed period. (Dkt. 13). Because the analysis of the credibility findings impacts the resolution of the listing issue, the undersigned will address the credibility findings first.

**Credibility**

Plaintiff argues that the ALJ found plaintiff's mother's testimony not entirely credible without consideration of any of the credibility factors. (Dkt. 13). Plaintiff also argues that the ALJ's credibility analysis is limited to a conclusory statement that the mother was not credible, followed by a recitation of the medical evidence. Id. Plaintiff contends that the ALJ's reasoning is not clear and that it is impossible to determine what part of the mother's testimony the ALJ found not credible. Id.

The Commissioner contends that the ALJ considered the mother's credibility in light of all the medical evidence and that the analysis was proper. (Dkt. 16). The Commissioner argues that the review of the medical evidence includes the ALJ's findings on the efficacy of treatment and plaintiff's activities, both proper factors in assessing credibility. Id. (citing 20 C.F.R. § 416.929). The Commissioner states that based on the medical evidence as a whole, the ALJ properly rejected the mother's testimony regarding plaintiff's pain and fatigue. Id.

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the

consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

In child disability cases, the testimony of a parent or other adult most familiar with the child is often used in lieu of the claimant's testimony regarding symptoms. See 20 C.F.R. §§ 416.924a(a) and 416.928(a). The ALJ should also consider the opinions of other nonmedical sources, such as teachers. See 20 C.F.R. § 416.924a(a). The ALJ's failure to provide specific credibility findings is not ordinarily recognized as harmless error in the Tenth Circuit. See Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001). Briggs holds that that where a parent, the person most familiar with the child, is giving testimony regarding the child's symptoms, "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." Id. (emphasis added).

The Tenth Circuit reiterated this position in Bledsoe ex rel. J.D.B. v. Colvin, 544 F. App'x 823 (10th Cir. 2013) (unpublished).[5] In Bledsoe, the ALJ made no credibility findings about the mother's testimony, although he "did provide a narrative summary" of her statements at the hearing. Id. at 825. The Tenth Circuit found that the narrative was "insufficient to fulfill the ALJ's duty to perform a credibility analysis." Id. The Tenth Circuit also rejected the Commissioner's argument that the ALJ's failure to make specific credibility findings was harmless error because the mother's testimony did not demonstrate that the child claimant was disabled. See id. The Tenth Circuit refused to apply the harmless error analysis because the record contained specific, relevant testimony from the mother that the ALJ failed to discuss or evaluate. See id. Specifically, the Tenth Circuit noted that the mother's testimony about the

---

[5] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

child's continued failing grades could, in the eyes of a reasonable administrative factfinder, support a finding of disability. See id. at 825-26.

In this case, the ALJ gave a narrative of the mother's testimony and a narrative of the medical evidence, but he did not link the two. Although the Commissioner contends that the ALJ rejected the mother's testimony regarding plaintiff's pain and fatigue, the ALJ's decision does not state what portions of the mother's testimony he found not credible. The mother accurately testified to plaintiff's treatment history, which would tend to bolster her credibility. Additionally, the ALJ made several statements that praised the mother's diligent pursuit of treatment options, which would also tend to bolster her credibility. In light of these facts and the ALJ's failure to link his findings to substantial evidence in the record, the ALJ's reasons for finding the mother not credible are unclear. Therefore, the undersigned finds that they are not supported by substantial evidence, and the undersigned recommends remanding the case for proper credibility findings.

**Listing 101.00 – Musculoskeletal System**

Plaintiff argues that the ALJ did not consider all of the portions of Listing 101.00. (Dkt. 13). Plaintiff contends that the ALJ was required to consider the criteria for age-appropriate activities in determining whether plaintiff was unable to ambulate effectively under 101.00B2b(3). Id.

The Commissioner raises two counter-arguments. (Dkt. 16). First, the Commissioner argues that plaintiff cannot establish that his diagnosis of bilateral clubfoot falls under one of the categories of impairments in Listing 101.00 and that plaintiff argues, improperly, that proof of an inability to ambulate effectively is its own listing. Id. Second, the Commissioner argues that the

ALJ did adequately consider the issue of age-appropriate activities in his discussion of the medical evidence and the mother's testimony. Id.

With respect to the Commissioner's first argument, the Commissioner ignores the ALJ's own findings. (R. 258). At step two, the ALJ found that plaintiff has the severe impairment of "bilateral clubfoot." Id. At step three, the ALJ stated that he "placed specific emphasis upon section 101.02(A) Major Dysfunction of a Joint(s) (due to any cause), which requires an inability to ambulate effectively as defined by 101.00(B)(2)(b)." Id. In other words, the ALJ found that plaintiff met one of the categories of impairments – 101.02(A) – and that the only question was whether that impairment prevented plaintiff from ambulating effectively.[6] Evaluating that question required the ALJ to look to 101.00B2b(3).

The undersigned also rejects the Commissioner's second argument. To meet the listing, plaintiff must establish that he satisfies the criteria for one of the categorical musculoskeletal impairments. The ALJ found that plaintiff has "Major dysfunction of a joint(s) (due to any cause)," one of the impairments included in the listing. Id. However, in evaluating whether that joint dysfunction "result[ed] in an inability to ambulate effectively, as defined in 101.00B2b," the ALJ did not consider all of the listed criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 101.02A.

As an initial matter, the Commissioner's argument ignores the fact that, on remand, the Court ordered the ALJ to consider the criteria set forth in 101.00B2b(3). (R. 329). In the context of Social Security disability cases, the Supreme Court has held that "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal

---

[6] The undersigned finds the Commissioner's argument on this point to be disingenuous. It is clear to the undersigned that plaintiff's ankles, one of the "major peripheral weight-bearing joints" described in 101.02(A), are impacted by his impairment. Although plaintiff's tendons cause the deformity in the ankles rather than a deformity within the ankle itself, the undersigned finds that the impairment of bilateral clubfoot does qualify as a "[m]ajor dysfunction of a joint." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 101.02(A).

on further judicial review." <u>Sullivan v. Hudson</u>, 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed. 941 (1989) (abrogated on other grounds by <u>Shalala v. Schaefer</u>, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993)). The Tenth Circuit has indicated that remand for failure to comply with the court's prior remand order does not require automatic reversal only if the ALJ's decision can be upheld on other grounds. See <u>Botello v. Astrue</u>, 376 F. App'x 847, 850-51 (10th Cir. 2010) (unpublished).

In this case, however, the sole issue is the degree to which plaintiff's clubfoot impacts his ability to function, including his ability to ambulate. The ALJ simply did not use the proper criteria to assess plaintiff's ability to ambulate effectively at step three. Contrary to the Commissioner's claim, the ALJ's statement that his discussion of the medical evidence at step four supported his step three finding does not demonstrate that the ALJ even understood that evaluating plaintiff's ability to effectively ambulate required him to consider age-appropriate activities. Accordingly, the undersigned finds that the ALJ failed to comply with the Court's remand order, which required the ALJ to analyze plaintiff's ability to ambulate effectively under 101.00B2b(3), requires remand because the ALJ's decision cannot be upheld on other grounds.

Turning to the merits of the Commissioner's argument, the regulation provides that the inability to ambulate effectively "is defined generally as having insufficient lower extremity functioning (see 101.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 101.00B2b(1). The reference to 101.00J includes instructions for examiners to follow in cases where the child does use hand-held assistive devices. See <u>id.</u> at 101.00J. Those instructions require the examiner to evaluate the child's ability to ambulate both with and without the device. See <u>id.</u> These instructions demonstrate that an inability to ambulate

effectively may or may not be predicated on the use of hand-held assistive devices. Accordingly, the ALJ's decision to base his finding at step three on the absence of hand-held assistive devices was in error.

Additionally, the regulations provide that, in assessing an older child's ability to ambulate effectively, the ALJ must consider whether the child is "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities." Id. at 101.00B2b(3). The regulation further states that

> examples of ineffective ambulation for older children include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out age-appropriate school activities independently, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about the child's home or a short distance at school without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. Although the ALJ is not required to develop "additional evidence about the child's ability to perform these specific activities," the ALJ is required to consider all of the evidence in the record. Id. at 101.00B2a.

The ALJ did not conduct a complete analysis at step three. Instead, he simply concluded that plaintiff did not meet the general definition of ineffective ambulation because plaintiff did not require the use of hand-held assistive devices. (R. 259). Notably, although the ALJ quoted portions of 101.00B2b(3), he did not include the specific examples of ineffective ambulation in that quote. Id.

The Commissioner argues that the ALJ's failure to do so is harmless error because the ALJ's step four findings properly address plaintiff's functional abilities. (Dkt. 16). The undersigned disagrees and finds that the harmless error analysis would not apply to the ALJ's

step three analysis in this case. In <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733-34 (10th Cir. 2005), the Tenth Circuit held that the harmless error analysis can be applied to insufficiently specific step three findings "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." The standard for harmless error requires a finding that the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004). The Court is permitted to consider the record as a whole in evaluating harmless error. <u>See</u> <u>Henderson v. Astrue</u>, 383 F. App'x 700, 702-03 (10th Cir. 2010) (unpublished).

Here, plaintiff's mother testified that plaintiff's activities are limited, that his gait is unstable, and that he experiences pain and fatigue easily. (R. 283-88). The ALJ found the mother's testimony not entirely credible, but as discussed *supra*, the ALJ failed to conduct a proper credibility analysis. Therefore, the undersigned cannot rely on the credibility findings to confirm the ALJ's factual findings. Moreover, after reviewing the record, the undersigned finds that the ALJ's factual findings at step three discount the issues with plaintiff's gait and contain inconsistencies that cannot meet the requirement for harmless error.

For example, the ALJ found that plaintiff's "surgeries, bracing and casting has caused the claimant marked limitations in his ability to ambulate over the three year period."[7] (R. 270). This statement, however, directly conflicts with the ALJ's recitation of the facts, in which the ALJ cites to treatment notes that plaintiff was walking without much difficulty and was able to correct his gait in October 2008 and January 2009. (R. 262). The ALJ also failed to discuss the subsequent physical therapy records, dating between June 2011 and May 2013, which

---

[7] This finding relates to the first three years of plaintiff's life and is lifted directly from the first ALJ decision. (R. 297).

demonstrate that plaintiff had continued difficulty with balance, was easily fatigued, complained of pain, and could maintain a normal gait only with consistent prompting from the physical therapist. (R. 422-56). The ALJ's only reference to these records is a statement from the mother that plaintiff "played outside quite a bit." (R. 262). Based on this evidence and the ALJ's inconsistent and incomplete findings, the undersigned cannot find that harmless error applies to the ALJ's analysis.

Because the ALJ failed to consider all of the criteria in Listing 101.00 and because the ALJ's failure to do so was not harmless error, the undersigned recommends that the decision be remanded to the ALJ for further proceedings.

**Functional Equivalence**

Plaintiff argues that the Court's previous order mandates a finding of marked limitation in the area of Health and Physical Well-Being. (Dkt. 13). Plaintiff contends that the Court's holding, combined with the ALJ's current finding of a marked limitation in the area of Moving About and Manipulating Objects, constitutes a finding of marked limitations in two domains of functioning and requires a finding that plaintiff is disabled. Id.

The Commissioner argues that plaintiff misinterprets the Court's remand order. (Dkt. 16). The Commissioner contends that the order simply found no error in the ALJ's findings and that the ALJ was free, on remand, to re-assess the evidence as long as the ALJ's actions did not conflict with the remand order. Id.

The Court's order remanding the case addressed two issues with respect to the impact of plaintiff's impairment on the domains of functioning. (R. 324-32). In the first decision, the ALJ found that plaintiff had a marked limitation in the domain of Health and Physical Well-Being, based on plaintiff's bilateral clubfoot. (R. 296-97, 330-31). Plaintiff challenged the finding of a

marked limitation, arguing that the ALJ should have found an extreme limitation. (R. 330). The Court held that it would not re-weigh the evidence, found substantial evidence to support the marked limitation, and stated that "[t]he marked limitation in the 'Health and Physical Well-Being' domain is, therefore, affirmed." Id.

Although that statement appears to be an affirmance of the marked limitation in that domain, it is not the end of the court's analysis. Plaintiff also challenged the ALJ's finding that plaintiff had no limitation in the domain of Moving About and Manipulating Objects. Id. The Court found that the ALJ's findings on this issue conflicted because the ALJ's finding of no limitation was inconsistent with the ALJ's statement in the Health and Physical Well-Being analysis that plaintiff's treatment had caused "'marked limitations in his ability to ambulate over the three year period.'" Id. The Court held that the ALJ, and not the Court, was the proper person to address the conflict and remanded the case "so that the ALJ can either explain why no conflict exists or resolve the conflict." Id.

The ALJ's decision on remand complied with these instructions. The question of the proper domain to address plaintiff's bilateral club foot arose in this case because the agency physicians opined that plaintiff's impairment caused a marked limitation in the domain for Health and Physical Well-Being. (R. 264). As the ALJ explained in reciting the proper standard for evaluating each domain, the domain for Moving About and Manipulating Objects "considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects." (R. 267, citing 20 C.F.R. § 416.926a(j)). The domain for Health and Physical Well-Being, however, "considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate

objects." (R. 269, citing 20 C.F.R. § 416.926a(l)). The ALJ determined that the agency physicians conducted an analysis of plaintiff's clubfoot in the wrong domain. (R. 264). Having reviewed the applicable regulations, the undersigned agrees with the ALJ's analysis and finds that it resolves the conflict in the original ALJ decision.

Accordingly, the undersigned recommends a finding of no error on this issue. The ALJ was not bound, under the law of the case doctrine, to maintain a finding of a marked limitation in the area of Health and Physical Well-Being. See generally Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009).

**Closed Period of Disability**

Because the undersigned has recommended remanding the case for further proceedings on issues impacting the ultimate question of disability, the undersigned finds that an analysis of plaintiff's request for a finding of a closed period of disability is not warranted.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision in this case be **REVERSED AND REMANDED**. On remand, the ALJ should make specific findings with respect to the mother's credibility and evaluate plaintiff's functional ability at step three using all of the criteria set forth in Listing 101.00, including the assessment of plaintiff's ability to ambulate effectively under 101.00B2b(3).

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 1, 2016.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 16th day of February, 2016.


_____
T. Lane Wilson
United States Magistrate Judge