IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY ROSADO, on behalf of J.R.A., a minor,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>　　　　　　Defendant. | Case No. 14-CV-602-GKF-TLW |

**OPINION AND ORDER**

Before the court is the Report and Recommendation of United States Magistrate Judge T. Lane Wilson on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits to plaintiff Kelly Rosado ("Ms. Rosado"), on behalf of her minor son, J.R.A., [Dkt. #20], and the Objections thereto filed by the Commissioner [Dkt. #21].

The Magistrate Judge recommended the Commissioner's decision be reversed and remanded, concluding that the ALJ did not adequately assess J.R.A.'s mother's credibility and did not adequately evaluate J.R.A.'s "inability to ambulate effectively" when finding that J.R.A.'s impairment did not meet or equal Listing 101.02(A) Major Dysfunction of a Joint(s) (due to any cause). The Commissioner objects, arguing the ALJ's analysis on those two points was proper and supported by substantial evidence in the record.

**I. Procedural History**

Ms. Rosado applied for supplemental security income benefits on J.R.A.'s behalf on December 11, 2008. [Dkt. #11, pp. 85-87]. The Social Security Administration denied the

application initially and on reconsideration. [*Id*. at 47-60]. ALJ Charles Headrick held an administrative hearing on April 19, 2010. [*Id*. at 35-46]. In a subsequent written decision, the ALJ found that J.R.A. was not disabled. [*Id*. at 15-34]. On April 29, 2011, the Appeals Council denied review. [*Id*. at 5-8].

Ms. Rosado appealed to this court on June 27, 2011. [*Id*. at 320]. In that appeal, the parties consented to proceed before the Magistrate Judge, who happens to be the same Magistrate Judge in this second appeal. [*Id*. at 329]. In the first appeal, the Magistrate Judge reversed and remanded because he concluded ALJ Headrick failed to compare J.R.A.'s ability to ambulate to that of older children who would be expected to be able to walk under Listing 101.00B2b(3), and because the ALJ failed to resolve conflicts in his findings regarding J.R.A.'s ability to ambulate effectively.

On remand, ALJ Lantz McClain held a hearing and issued a decision finding that J.R.A. was not disabled. [*Id.* at 256-78, 281-94]. The Appeals Council denied review on August 5, 2014. [*Id.* at 243-47]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a *de novo* review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*,

331 F.3d 758, 760 (10th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is more than a scintilla, but less than a preponderance.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).  Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

### III. Credibility Analysis

The Commissioner objects to the Magistrate Judge's finding that the ALJ's analysis of Ms. Rosado's credibility was incomplete and not based on substantial evidence.  Credibility determinations are "peculiarly the province of the finder of fact," in this case, the ALJ.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  When making credibility determinations, ALJs may consider a number of factors, including:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ need not consider all of these factors in each case, as long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Porter v. Colvin*, 525 F.App'x 760, 764 (10th Cir. 2013) (unpublished) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  The specific reasons articulated by the ALJ "should be closely and affirmatively linked to substantial evidence," may not simply recite the factors that are described in the regulations,

3

and should be more than a conclusion dressed up "in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).

The ALJ was required to make a specific credibility finding regarding Ms. Rosado's testimony. *See Bledsoe ex rel. J.D.B. v. Colvin*, 544 F. App'x 823, 825-26 (10th Cir. 2013). After reviewing Ms. Rosado's testimony regarding J.R.A.'s limitations, the ALJ made a credibility determination, specifically that Ms. Rosado's statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below." [Dkt. #11, p. 265]. The ALJ then described medical evidence suggesting J.R.A.'s limitations were not as severe as Ms. Rosado had testified, including medical evidence addressing specific statements in Ms. Rosado's testimony. [*Compare, e.g.*, Dkt. #11, p. 265 (Ms. Rosado testified on June 3, 2013 that J.R.A. "does not play, he sits around. He does play with neighborhood children for a short period of time, such as five to seven minutes of basketball, and then he sits on the curb.") *with* Dkt. #11, p. 266 (Ms. Rosado reported to a physical therapist on May 10, 2013 that J.R.A. "had been playing outside quite a bit.")]. After reviewing the medical evidence, the ALJ concluded J.R.A.'s "right foot problem, by all accounts in medical records, is substantially resolved . . . . [and although] the left foot has been less responsive to treatment than the right, the ultimate outcome of treatment is unknown, the claimant is receiving excellent care that is allowing him the opportunity to gain function in the left foot as well." [*Id.* at 267].

The Magistrate Judge recommends a conclusion that the ALJ's credibility analysis was inadequate because, although "the ALJ gave a narrative of the mother's testimony and a narrative of the medical evidence, . . . he did not link the two." [Dkt. #20, p. 13]. In making this recommendation, the Magistrate Judge relies on *Bledsoe*, cited above. The Commissioner objects.

4

A negative credibility determination cannot be supported by a mere reference to "other factors," but must be accompanied by "a more thorough analysis." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (quoting *Hardman*, 362 F.3d at 679).  However, *Bledsoe* and other Tenth Circuit cases do not require an ALJ to link medical evidence to each of the witness's statements.  *See id.* ("although the ALJ may not have identified any specific incredible statements as part of his evaluation . . . , his approach performed the essential function of a credibility analysis by indicating to what extent he credited what [the witness] said when determining the limiting effect of her symptoms.") (citing *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987)); *Bledsoe*, 544 F. App'x at 825 (ALJ "made no credibility findings whatsoever about [the mother's] testimony.").  Here the ALJ clearly made a credibility determination for Ms. Rosado's testimony regarding J.R.A.'s limitations and cited substantial medical evidence in support of that determination.  The Commissioner's objection is sustained.

### III. Ability to Ambulate Effectively

ALJ Headrick, whose 2010 decision was the subject of the first appeal to this court, concluded J.R.A.'s impairment did not meet or medically equal Listing 101.02—*Major dysfunction of a joint(s) due to any cause*.  [Dkt. #11, p. 21].  In so doing, ALJ Headrick took into consideration—and appears to have primarily relied on—the "continuing surgical management" of J.R.A.'s impairment.  [*Id.*].  ALJ Headrick also considered whether J.R.A.'s impairment resulted in an "inability to ambulate effectively," and went on to quote the definition of that phrase, which is contained in Listing 101.00B2b.  ALJ Headrick specifically quoted a portion of the definition that applies exclusively to "children too young to be expected to walk independently."  [*Id.*].  The Magistrate Judge, when considering ALJ Headrick's decision on appeal, concluded ALJ Headrick had erred because J.R.A. was old enough in May of 2010 to be

5

expected to be able to walk,[1] absent an impairment.  Listing 101.00B2b provides different criteria for assessing the ability of such older children to ambulate effectively.  *See* § 101.00B2b(3).  The Magistrate Judge remanded the case, in part, to allow "the ALJ to conduct his analysis under the proper listing."  [*Id.* at 333].  The Magistrate Judge did not note any error in the depth of ALJ Headrick's analysis of whether J.R.A. was able to ambulate effectively, holding only that the ALJ had "applied the incorrect listing requirement."  [*Id.*].

On remand, ALJ McClain quoted the entirety of Listing 101.00B2b's definition of "inability to ambulate effectively[,]" including both the language applicable to children not old enough to be expected to be able to walk and the language applicable to older children.  [*See id.* at 263].  That definition reads as follows:

> *b. What We Mean by Inability To Ambulate Effectively*
>
> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 101.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 101.05C is an exception to this general definition because the child has the use of only one upper extremity due to amputation of a hand.)
>
> (2) *How we assess inability to ambulate effectively for children too young to be expected to walk independently.* For children who are too young to be expected to walk independently, consideration of function must be based on assessment of limitations in the ability to perform comparable age-appropriate activities with the lower extremities, given normal developmental expectations. For such children, an extreme level of limitation means skills or performance at no greater than one-half of age-appropriate expectations based on an overall developmental assessment rather than on one or two isolated skills.
>
> (3) *How we assess inability to ambulate effectively for older children.* Older children, who would be expected to be able to walk when compared to other children the same age who do not have impairments, must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities. They must have the ability to travel age-appropriately without extraordinary assistance to and from school or a place of employment. Therefore, examples of ineffective ambulation for older children include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out age-appropriate school activities independently, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about the child's

---

[1] J.R.A. was born on April 27, 2007, and was therefore three years old in May of 2010.

> home or a short distance at school without the use of assistive devices does not, in and of itself, constitute effective ambulation.

ALJ McClain concluded J.R.A.'s impairment did not meet Listing 101.02 because J.R.A. is able to ambulate without a handheld assistive device under the general definition in paragraph (1). [*See* Dkt. #11, pp. 263, 266, 272]. ALJ McClain did not address the criteria in paragraph (3) for children who are old enough to be expected to be able to walk. However, he found that the medical evidence "as set out below in this opinion"—*i.e.*, his Step Four analysis—generally supports his conclusion that J.R.A.'s impairment does not meet any Listing. [*Id.* at 263].

The Magistrate Judge concluded ALJ McClain's analysis did not comply with his remand Order because the ALJ did not adequately assess J.R.A.'s ability to ambulate using the considerations in paragraph (3). The Commissioner objects, arguing that the ALJ's analysis was adequate and that there is substantial medical evidence showing that J.R.A.'s ability is not significantly limited compared to his peers.

The court concludes ALJ McClain's decision attempted to address the error identified in the Magistrate Judge's remand Order. In that Order, the Magistrate Judge concluded that ALJ Headrick had mistakenly applied paragraph (2) of the definition of "inability to ambulate effectively." On remand, ALJ McClain quoted the entire definition, did not cite paragraph (2) specifically, and did not apply language from paragraph (2). ALJ McClain appears to have concluded it was unnecessary to apply either paragraph (2) or paragraph (3) in light of his determination that J.R.A. did not meet the general definition in paragraph (1). The remand Order, of course, did not address this interpretive question, and was primarily focused on ALJ Headrick's error in applying paragraph (2), which did not apply to a child J.R.A.'s age. Thus, although ALJ McClain's decision stands in some tension with the court's remand Order, it was not a direct violation thereof. For this reason, and in light of the other error identified below, the

court need not remand the case on the separate basis of failing to comply with the court's remand Order.

Nevertheless, the court must consider whether ALJ McClain adequately applied the definition of "inability to ambulate effectively." As noted above, ALJ McClain applied the general definition in paragraph (1), but did not specifically address the additional age-appropriate criteria in paragraph (3).[2] The criteria in paragraph (3) cannot be ignored simply because the claimant meets the general definition in paragraph (1). *See Ingram v. Barnhart*, 2007 WL 1521040, *4 (D.D.C. 2007) (remanding to ALJ for failure to apply paragraph (3) after deciding claimant did not meet general definition in paragraph (1) because paragraph (1) definition was "not dispositive of whether a claimant can ambulate effectively" and ALJ failed "to apply the complete legal standard for determining if a child has the ability to ambulate effectively.").

Paragraph (3) states that in order for a walking-age child to be able to ambulate effectively, the child must be able to do two things: "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities" and "travel age-appropriately without extraordinary assistance to and from school or a place of employment." § 101.00B2b(3). ALJ McClain did not assess either of these requirements explicitly.

The Commissioner argues the Step Four analysis ALJ McClain referenced at Step Three provides substantial evidence supporting the ALJ's implicit conclusion that J.R.A. does not meet the criteria in paragraph (3). However, most of the evidence of J.R.A.'s ability to move in the

---

[2] The Magistrate Judge also found error because the ALJ did not consider J.R.A.'s ability to walk both with and without an assistive device. [Dkt. #20, pp. 15-16]. Under the relevant listing, the ambulatory ability of a child who uses an assistive device should be evaluated "with and without the use of the assistive device unless" the child's doctor disagrees. § 101.00J. However, the purpose of evaluating the child's ability to ambulate with and without an assistive device is to "provide information as to whether, or the extent to which, the child is able to ambulate without assistance." *Id.* As noted above, the ALJ concluded J.R.A. can walk without an assistive device. That conclusion implies J.R.A. could walk with an assistive device. There is no indication in the record that the ALJ refused to consider medical evidence of J.R.A.'s ability to walk with an assistive device. The court declines to find error on this point.

Step Four analysis addresses his ability to move around an examination room or to travel other short distances. Paragraph (3) explicitly requires more. § 101.00B2b(3) ("The ability to walk independently about the child's home or a short distance at school without the use of assistive devices does not, in and of itself, constitute effective ambulation.").

The evidence in the Step Four analysis that might relate to paragraph (3) is not substantial. The Commissioner notes Ms. Rosado's testimony that J.R.A. could play basketball for five to seven minutes before needing to sit down. While that statement, if true, may be consistent with a finding that J.R.A. can walk longer distances and travel as described in paragraph (3), it also may not. For example, J.R.A.'s friends may accommodate him or play half-court, limiting his need to walk longer distances. The other piece of evidence the Commissioner cites that appears to be relevant to paragraph (3) relates to J.R.A.'s ability to climb up and down stairs. Paragraph (3) includes several examples of ineffective ambulation, one of which is "the inability to climb a few steps at a reasonable pace with the use of a single hand rail." The Commissioner cites a physical therapy report stating J.R.A. was able to ascend stairs without using a rail and descend stairs using a single rail. [Dkt. #11, p. 446]. And yet, the report says nothing about J.R.A.'s pace in doing so. Furthermore, even if the medical evidence did not match one of Paragraph (3)'s examples of ineffective ambulation, it may match others. Finally, at Step Four, the ALJ stated he "evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments." [*Id.* at 264]. While this statement could be read to imply the kind of consideration required under paragraph (3), that reading would be too generous. The ALJ's broad conclusion is not specific enough to show the ALJ applied the *complete* definition of "inability to ambulate effectively" at Step Three.

The Commissioner argues any error in the ALJ's analysis of J.R.A.'s ability to ambulate effectively was harmless because the medical evidence shows J.R.A. cannot meet the other requirements of § 101.02. Specifically, the Commissioner argues § 101.02 does not apply to a diagnosis of club feet because club feet result from deformities in the tendons surrounding the ankle joint, not a deformity in the joint itself. The Commissioner's reading of § 101.02 is overly strict. There is no requirement that the deformity of the joint result from a deformity in the bones of the joint. After all, the title of the listing is "Major dysfunction of a joint(s) (*due to any cause*)." § 101.02 (emphasis added). As demonstrated in the medical evidence regarding J.R.A., club feet are a "gross anatomical deformity" causing "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." § 101.02. The Commissioner also argues the medical evidence of record did not contain "medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis [bone fusion] of the affected joint(s)." *Id.* However, the listing does not require the imaging itself to be in the record. Rather, the listing requires "findings on" such imaging. *Id.* The record contains findings based on x-rays showing both club feet and equinus deformity, both of which involve joint space narrowing. [*See* Dkt. #11, pp. 147, 153]. The Commissioner's argument for harmless error is not persuasive.

In sum, the ALJ's analysis at Step Three did not address the criteria in paragraph (3) of the definition of "inability to ambulate effectively." As the Magistrate Judge noted, the ALJ's statements at Step Three do not "demonstrate that the ALJ even understood" that he needed to apply the criteria in paragraph (3). [Dkt. #20, p. 15]. Although the ALJ, at Step Three, generally invoked his Step Four analysis, that analysis does not contain substantial evidence that J.R.A. failed to satisfy the *complete* definition of "inability to ambulate effectively." Without specific

10

analysis, the court is unable to "assess whether relevant evidence adequately supports the ALJ's conclusion that [claimant's] impairments do not meet or equal any Listed Impairment, and whether [the ALJ] applied the correct legal standards to arrive at that conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  Remand is necessary so that the ALJ may expressly apply the complete definition of "inability to ambulate effectively," including paragraph (3).

## IV. Conclusion

For the reasons set forth above, the Commissioner's objections to the Magistrate Judge's Report and Recommendation [Dkt. #21] are overruled in part and sustained in part.  The Magistrate Judge's Report and Recommendation [Dkt. #20] is adopted insofar as it recommends reversal and remand to allow the ALJ to explicitly apply the criteria in paragraph (3) of § 101.00B2b.  The court declines to adopt the remainder of the Report and Recommendation.  The decision of the Commissioner is reversed and remanded.  On remand, the ALJ should explicitly apply the criteria in paragraph (3) of § 101.00B2b.

IT IS SO ORDERED this 4th day of March, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT